UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRINA WEGENER, ON BEHALF
OF CW,

    Plaintiff,                              Civil Action No. 09-10562

v.                                         HON. JOHN CORBETT O'MEARA
                                              U.S. District Judge
                                              HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Trina Wegener, acting on behalf of her daughter ("CW"), brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Childhood Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment DENIED.

## PROCEDURAL HISTORY

Plaintiff, on behalf of her daughter, CW, applied for Childhood Supplemental Security Income on June 2, 2005, alleging disability as of August 31, 2004 (Tr. 45). After the initial denial of the claim on September 13, 2005, Plaintiff filed a timely request for an administrative hearing, held on March 12, 2008 in Flint, Michigan (Tr. 35, 155). Administrative Law Judge ("ALJ") John L. Christensen presided. Plaintiff, represented by attorney Mikel Lupisella, testified, as did CW (Tr. 161-172, 173-175). On April 9, 2008,

ALJ Christensen found Plaintiff not disabled (Tr. 24). On December 19, 2008, the Appeals Council denied review (Tr. 2-4). Plaintiff filed for judicial review of the final decision on February 14, 2009.

## BACKGROUND FACTS

CW, born October 23, 1997, was 10 when the ALJ issued his decision (Tr. 24, 45). Plaintiff alleges that her daughter is disabled as a result of psychological conditions(Tr. 51).

### A.     Plaintiff's Testimony

Plaintiff, Trina May Wegener, testified that she lived with her daughter CW and three other children (Tr. 161). Plaintiff acknowledged that CW attended school and was currently placed in an age-appropriate, mainstream class (Tr. 162). Plaintiff alleged that CW's poor organizational skills obliged her to redo her homework assignments on a regular basis (Tr. 163). Plaintiff also complained that CW's "slacking" when asked to perform household chores was a burden to the other children, adding that her daughter would complete chores only if directed to complete one task at a time with constant supervision (Tr. 165). Plaintiff alleged that on occasions, CW had slammed a door, cried, and become angry with her siblings (Tr. 167).

Plaintiff testified that CW did not "have very many friends at all" (Tr. 168). Plaintiff admitted that CW respected her and got along well with her school teacher (Tr. 168). Plaintiff indicated that in addition to diagnoses of bipolar disorder and an obsessive compulsive disorder ("OCD"), CW had "had some incidences of hearing voices" (Tr. 168). She noted that CW had recently been molested by a family friend, but denied that the 10-year-old had physical problems, adding that she played on both basketball and volleyball teams (Tr. 169-171). Plaintiff also reported that CW had erratic sleeping habits (Tr. 170).

In response to questioning by her attorney, Plaintiff testified that her father, maternal

grandmother, and great-grandmother all suffered from schizophrenia (Tr. 172). She completed her testimony by alleging that her daughter talked to imaginary friends (Tr. 172).

### B. CW's Testimony

CW, 10, testified that her favorite subject was science (Tr. 174). She reported that her basketball team, the "Vice Champions," had never lost a game and that she also played volleyball (Tr. 174). CW stated that she enjoyed reading in her free time, adding that she liked reading "Candy Apple" books (Tr. 175).

### C.     Medical Evidence

#### 1. Treating Sources

In March, 2005, Psychiatrist Venkateswara B. Talasila, M.D. performed a psychiatric evaluation of CW, noting that since August, 2004, the child "heard" the voice of her schoolteacher, telling her to "'[d]o hard work'" (Tr. 75). CW made only fair eye contact and was easily distracted (Tr. 75). She denied "feeling paranoid or suspicious" (Tr. 75). Dr. Talasila, noting that Plaintiff counted numbers compulsively, assigned her a GAF of 40[1] (Tr. 76). The following month, Dr. Talasila prescribed Zoloft and a psychotropic medication (Tr. 74).

In June, 2005, CW's elementary school principal noted that although the child had experienced concentrational problems earlier in the school year, she showed improvement after beginning a course of medication in May, 2005 (Tr. 79). The same month, CW's second grade teacher, noting that the child was reading beyond her grade level, indicated that CW experienced improvement in learning and completing tasks when medicated (Tr. 81-82).

---

[1]

A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication ... or major impairment in several areas, such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 34 (4th ed.2000)

The teacher noted that on occasion, CW experienced difficulty "taking turns" and "being patient" (Tr. 83, 85). The teacher concluded her assessment by reiterating that medication created "a noticeable difference (improvement)" in the child's behavior (Tr. 86-87).

In August, 2005, Dr. Talasila's treatment notes show that CW was doing "fairly well," but (by her grandmother's account) continued to talk to herself (Tr. 116). Later the same month, Dr. Talasila observed "no unusual behaviors" during the examination, but noted reports of continued sleeping problems (Tr. 114). The following month, CW's father reported that she was improving (Tr. 113). October, 2005 through January, 2006 treating notes indicate that CW's condition was stable (Tr. 104-109). An end of year assessment by CW's third grade teacher showed that she achieved satisfactory ratings in all subjects (Tr. 151). In November, 2006, CW received an increased dosage of Concerta after her mother reported renewed concentrational problems (Tr. 103). Treatment notes created in April, 2007 state that CW was "doing fine" on Concerta (Tr. 131). A fourth grade end-of-year summary showed that Plaintiff needed improvement in self-discipline and completing assignments on time, but was progressing satisfactorily in most academic and social categories (Tr. 150).

### 2. Consultive and Non-Examining Sources

In August, 2005, Nathalie Menendes, PsyD. performed a mental examination of CW on behalf of the SSA (Tr. 88-92). CW, then seven, exhibited average intelligence, with clear speech, and logical and relevant thought processes (Tr. 90-92). CW admitted to hearing voices, but noted that they came from "inside her head" (Tr. 90). Dr. Menendes, noting CW's history of witnessing domestic violence, commented that the child had recently been removed from her parents home and was living with her grandparents (Tr. 90). Acknowledging a family history of schizophrenia, Dr. Menendes noted a diagnosis of OCD,

but questioned the presence of a psychotic disorder (Tr. 92). She assigned Plaintiff a GAF of $65^2$ (Tr. 92).

The following month, a non-examining source performed a "Childhood Disability Evaluation" assessment on behalf of the SSA (Tr. 93-98). In the domains of "Acquiring and Using Information," "Interacting and Relating With Others," "Moving About and Manipulating Objects," and "Health and Physical Well-Being," CW was deemed unimpaired (Tr. 95-96). In "Attending and Completing Tasks" and "Caring for Yourself," CW's limitations were "less than marked" (Tr. 95-96). The assessment found that while CW experienced some degree of impairment in these areas, the limitations "[did] not meet, medically equal, or functionally equal the listings" (Tr. 93).

### D. The ALJ's Decision

Citing Plaintiff's school and psychiatric records, ALJ Christensen found that CW experienced the severe impairments of attention deficit hyperactivity disorder ("ADHD") and OCD, finding however that neither condition met or medically equaled "one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1" (Tr. 17-18). Pursuant to 20 C.F.R. 416.929, he found that CW had 1) "less than marked" limitations in acquiring and using information 2) marked limitations in attending and completing tasks 3) no limitations in interacting and relating with others 4) no limitations in moving and manipulating objects 5) "less than marked" limitations in caring for herself and 6) no limitations in physical well-being (Tr. 20-24).

ALJ Christensen found that "statements concerning the intensity, persistence, and

---

[2]GAF scores in the range of 61-70 indicate "some mild [psychological] symptoms or some difficulty in social, occupational, or school functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 32 (*DSM-IV-TR* ), 30 (4th ed.2000).

limiting effects of the claimant's symptoms" were "not entirely credible" (Tr. 19). He found that CW was "doing well on her medication regimen," remarking that she was not showing signs of hyperactivity (Tr. 19). He observed that her school records showed she was "doing well," also citing Dr. Menendes August, 2005 findings that CW's psychological limitations were mild (Tr. 18-19).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

### Childhood Benefits

42 U.S.C. § 1382c (a)(3)(C)(I) provides that "[a]n individual under the age of 18 shall be considered disabled" if he or she "has a medically determinable physical or mental impairment which results in marked and severe functional limitations."[3]  In evaluating whether a child is disabled, the Commissioner is to consider, in sequence, whether the child claimant 1) is "doing substantial gainful activity" 2) has a severe impairment, and if so 3) has "an impairment(s) that meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.924(a).  In determining whether the child claimant is disabled at the third step, the Commissioner determines functional ability in six domains:

> (i) Acquiring and using information;
>
> (ii) Attending and completing tasks;
>
> (iii) Interacting and relating with others;
>
> (iv) Moving about and manipulating objects;
>
> (v) Caring for yourself; and,
>
> (vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

To establish disability at the third step, "the impairment(s) must . . . result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* A "marked" limitation is defined as an impairment(s) that "interferes seriously" with the ability "to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation "interferes *very* seriously" with the ability "to

---

[3] Childhood claims are subject to the same 12-month durational requirement as adult claims. 42 U.S.C. § 1382c (a)(3)(C)(i)

independently initiate, sustain, or complete activities"(emphasis added). 20 C.F.R. § 416.926a(e)(3).

## ANALYSIS

### Marked Versus Extreme Limitations

Plaintiff disputes the ALJ's finding that CW experienced marked rather than *extreme* limitations in attending and completing tasks.[4] *Plaintiff's Brief* at 6-8. Citing Dr. Talasila's 2005-2006 treating records and a June, 2005 assessment by CW's school teacher, she contends that the ALJ's determination was not supported by substantial evidence. *Id.*

Contrary to this argument, substantial evidence supports the ALJ's finding that CW's limitations in attending and completing tasks were non-extreme. Plaintiff cites the ALJ's observation that school records showed that CW had "'extreme difficulty staying on tasks with a slight improvement when on medications,'" apparently contending that the ALJ's use of the term *extreme* in this context obliged him to find extreme limitations in the domain of attending and completing tasks. *Plaintiff's Brief* at 6 (*citing* Tr. 18). However, in determining that CW's limitations were marked, rather than extreme, the ALJ noted that her "ability to maintain attention and complete tasks [was] improved with the [ongoing] use of medications" (Tr. 21). He observed elsewhere that Plaintiff's psychological limitations did not require her to repeat a grade in school, noting that "[h]er reading and math skills [were] at an age appropriate level" (Tr. 20). He reasonably inferred that CW's continued ability to receive acceptable grades (suggesting that she completed at least a substantial portion of her

---

[4] Plaintiff's argument that the ALJ erred by "[f]ailing to finding . . . *severe* limitation in attending and completing tasks" (emphasis added) is construed to state that the ALJ erred by failing to finding *extreme* limitations, the proper term of art to used to describe the greatest degree of impairment. *Plaintiff's Brief* at 6.

school assignments on time) stood at odds with the contention that she experienced extreme limitations in this domain.

In further support of the "extreme" limitations argument, Plaintiff cites an August, 2005 statement by CW's grandmother, stating that the child (temporarily removed from her mother's care) talked to an imaginary family when she was "lonely" (Tr. 115). However, Dr. Talasila's treating notes from the following day show "no unusual behaviors" with a "bright" affect (Tr. 114). Further, while the grandmother reported that CW experienced "impulsive behaviors" and sleeping difficulties, treating notes created in the following two months showed the absence of mood or school problems and improved sleeping habits (Tr. 112-113). Likewise, while in June, 2005, CW's grandmother reported that the child required "constant supervision" in completing household chores, Dr. Talasila's subsequent treating notes, as well as school records, indicate that concentrational problems were substantially alleviated with medication (Tr. 104-109, 131). Although Dr. Talasila's November, 2006 treating notes state that CW's mother claimed that her daughter's medication was losing its effectiveness, the psychiatrist noted that CW exhibited a "bright" effect and "euthymic" mood (Tr. 103). Even taking the mother's account of renewed problems at face value, I note that CW's allegedly decreased ability to attend to and complete tasks did not prevent her from being promoted to the next grade or obtain a majority of "satisfactory" markings on her final fourth grade report card (Tr. 150, 162).

In closing, this Court notes that its conclusion recommending the grant of summary judgment to the Commissioner is not intended to trivialize CW's legitimate impairments. However, the overriding question in this appeal is whether the Commissioner's decision was supported by substantial evidence. Based on a review of this record as a whole, the ALJ's decision is easily within the "zone of choice" accorded to the fact-finder at the administrative

level pursuant to *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                                s/R. Steven Whalen
                                                                UNITED STATES MAGISTRATE JUDGE

Dated: December 29, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 29, 2009.

                s/Susan Jefferson
                Case Manager